**METAL EXCHANGE CORPORATION and Continental Aluminum Corporation, Appellants,**

v.

**J.W. TERRILL, INC., Respondent.**

**No. ED 85907.**

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 18, 2005.

JoAnn T. Sandifer, St. Louis, MO, for Appellant.

Thomas J. Magee, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

Metal Exchange Corporation (Metal Exchange) and Continental Aluminum Corporation (Continental Aluminum) (collectively referred to as Metal Exchange) brought this action against J.W. Terrill (Terrill), alleging claims of negligence, breach of contract, and breach of fiduciary duty regarding the procurement of insurance policies. Terrill filed a motion for summary judgment. The motion was granted and judgment was entered in favor of Terrill on all counts. Metal Exchange appeals from the grant of summary judgment in favor of Terrill. Metal Exchange argues the trial court erred in granting summary judgment in favor of Terrill because (1) collateral estoppel did not bar Metal Exchange's claims, and (2) a genuine issue of material fact exists with respect to the existence of a contract between the parties for Terrill to provide seamless insurance coverage for Metal Exchange. We reverse and remand.

Metal Exchange and Continental Aluminum are sister corporations engaged in the business of recycling metal. Terrill is an insurance brokerage firm that, among other things, undertakes risk identification and exposure analysis, prepares insurance programs, implements insurance programs and procures insurance for other companies. Metal Exchange is based in St. Louis County and Continental Aluminum is based in Michigan. Metal Exchange alleges that in 1986 it entered into an agreement with Terrill for Terrill to act as an insurance consultant on a fee and commission basis. Metal Exchange allegedly accepted Terrill's proposals and paid the agreed amount of $50,000 for Terrill "to handle the placement of insurance needs."

Terrill procured insurance for Metal Exchange's operations in Michigan. These policies included a Workers' Compensation and Employers Liability Policy issued by Travelers Insurance Company (WC/EL Policy) and a Catastrophic Umbrella Policy also issued by Travelers Insurance Company (CUP Policy). In addition, Terrill obtained an Excess Liability Policy through The Home Insurance Company.

The WC/EL Policy and the CUP Policy contained exclusionary language for intentional acts. The WC/EL Policy contained the following exclusion: "This insurance does not cover bodily injury intentionally caused or aggravated by you."

The CUP Policy excluded coverage for bodily injury "expected or intended from the standpoint of the insured." The Excess Policy issued by Home Insurance is not at issue in this appeal.

In the underlying claim, Stanislaw Golec (Golec), Metal Exchange's employee, while working as a furnace loader in Michigan, was severely burned when an explosion covered him in molten aluminum. Golec sued Metal Exchange in Michigan state court under the intentional tort exception to the Michigan Workers' Disability Compensation Act (Michigan Compensation Act). Travelers Insurance Company (Travelers) undertook defense of the case filed by Golec in Michigan. The Michigan trial court granted summary judgment in favor of Metal Exchange finding that Go-

lec's exclusive remedy was under the Michigan Compensation Act.

Golec appealed to the Michigan Court of Appeals, which reversed the trial court's decision. The Michigan Court of Appeals found that Golec sufficiently established Metal Exchange had actual knowledge of a specific danger—an explosion of molten aluminum—that was certain to result in an injury to Golec. The Michigan Court of Appeals further reasoned that Metal Exchange willfully disregarded that knowledge by requiring Golec to work under the same conditions that produced his earlier minor injury. At this point, Travelers ceased defending the claim.

Metal Exchange appealed to the Michigan Supreme Court. The Michigan Supreme Court held that the intentional tort exception to the Michigan Compensation Act allowed imposition of civil liability under two distinct sets of circumstances. The Michigan Supreme Court found that genuine issues of material fact existed with respect to the second set of circumstances—the "inferred intent" or "faux intent" exception. Specifically, the Michigan Supreme Court held that genuine issues of material fact existed with respect to whether Metal Exchange disregarded actual knowledge of the condition that caused Golec's injury and that an injury was certain to occur. The Michigan Supreme Court remanded the underlying case for further proceedings.

Thereafter, Golec settled his claims against Metal Exchange. Pursuant to the terms of the settlement agreement, a consent judgment was entered in favor of Golec and against Metal Exchange in the amount of $8,627,323.00, plus interest. The consent judgment provided that Golec would not seek to enforce or collect the consent judgment against or from any asset or property of Metal Exchange other

than policies of insurance issued by Travelers and/or The Home Insurance Company.

Golec then instituted a garnishment action against Travelers. Metal Exchange was also a party to this action. In the garnishment action, the Michigan trial court ruled that Travelers was contractually obligated under the WC/EL Policy but not obligated under the CUP Policy. No appeal was taken from the ruling with respect to the WC/EL Policy. Travelers settled Golec's claim under the WC/EL Policy for $1,725,000.00. However, Golec appealed the finding in favor of Travelers on the CUP Policy. The Michigan Court of Appeals reversed summary judgment, finding the policy language in the CUP Policy does not preclude coverage for liability under the "inferred intent" or "faux intent" exception as a matter of law.

Following the reversal, Travelers filed an application for leave to appeal to the Michigan Supreme Court. However, while the application was pending, a settlement was reached by the parties for all claims under the CUP Policy. Travelers agreed to pay $2,750,000.00 to settle its liability under the CUP policy for Golec's claim.

Metal Exchange filed the present action in Missouri state court against Terrill in three separate counts alleging negligence, breach of contract, and breach of fiduciary duty. Each count is premised on the allegation that Terrill failed to procure a CUP Policy that "followed form" of the underlying WC/EL Policy and provided the same scope of coverage as the WC/EL Policy.

After discovery, Terrill filed a motion for summary judgment. Terrill's motion for summary judgment asserted that Metal Exchange's claims were barred by the doctrine of collateral estoppel. In addition, the motion for summary judgment asserted that no written contract existed that required procurement of "follow form" coverage. Metal Exchange filed

their response to the motion for summary judgment. Thereafter, the trial court granted Terrill's motion for summary judgment. Metal Exchange now appeals from that judgment.

The review of summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.*

■ In their first point, Metal Exchange argues the trial court erred in granting summary judgment in favor of Terrill because collateral estoppel did not bar Metal Exchange's claims. Specifically, Metal Exchange contends Terrill failed to establish the necessary elements for collateral estoppel because the Michigan Court of Appeals' decision is not a final determination that the CUP Policy provides coverage for Golec's injuries. We agree.

■ Collateral estoppel precludes parties from relitigating issues previously adjudicated. *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979). A non-party to an earlier adjudication may assert collateral estoppel, or issue preclusion, against a party to the prior suit to bar relitigation of an issue in a subsequent proceeding. *St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451, 455 (Mo.App. E.D.2000). The objective of collateral estoppel or issue preclusion is to relieve parties from the costs and vexation of multiple litigations, to conserve judicial resources, and to encourage reliance on adjudication by avoidance of inconsistent decisions. *Bi–State Development Agency v. Whelan Sec. Co.*, 679 S.W.2d 332, 335 (Mo.App. E.D.1984).

■ In reviewing whether the application of collateral estoppel is appropriate, we consider the following factors: 1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with the party to the prior adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issues in the prior suit. *Oates*, 583 S.W.2d at 719.

■ Here, Terrill sought summary judgment on all counts of Metal Exchange's petition on the grounds of collateral estoppel. Specifically, Terrill asserted that the Michigan Court of Appeals determined in Golec's garnishment proceedings that the CUP policy provided coverage for Golec's injuries. Terrill then argues that, under collateral estoppel principles, this determination bars Metal Exchange's claims that Terrill failed to procure seamless insurance coverage for it. Since the trial court did not specify the reasons for its grant of summary judgment, it is presumed to have based its decision on the grounds specified in the motion. *McDowell v. Waldron*, 920 S.W.2d 555, 562 (Mo.App. E.D.1996).

Contrary to Terrill's assertion in its motion for summary judgment, the Michigan Court of Appeals did not render a final decision on whether the CUP policy provided coverage for Golec's injuries. The court simply reversed a grant of summary judgment based upon its conclusion that coverage for Golec's injuries under the CUP policy turned upon the subjective intent of the employer, which could not be inferred as a matter of law. *Golec v.*

*Metal Exchange, Corp.*, 2002 WL 44414 at *3–6 (Mich.App. 2002).

On appeal, Metal Exchange limits its claim of error to the second element of collateral estoppel, specifically whether there was a judgment on the merits finding coverage under the CUP Policy. "A judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." *Hayes v. United Fire & Cas. Co.*, 3 S.W.3d 853, 856 (Mo.App.1999).

It is well established that a denial of a summary judgment is not a final judgment on the merits. *Wilson v. Hungate*, 434 S.W.2d 580 (Mo. banc 1968) (order denying summary judgment is not an appealable final order). "The denial of a motion for summary judgment ... does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial." *Hoevelman v. Reorganized School Dist. R2 of Crawford County*, 430 S.W.2d 753, 754–55 (Mo.App.1968) (*quoting Switzerland Cheese Association, Inc. v. El Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966)).[1] The rule set forth in these cases is controlling here. The Michigan Court of Appeals did not finally adjudicate that the CUP policy provides coverage for Golec's injuries. Instead, the court reversed the grant of summary judgment in favor of Travelers under the CUP policy finding the policy exclusion

required consideration of the subjective expectation of the employer. *Golec*, 2002 WL 44414 at *5.

In Golec's garnishment proceedings, the Michigan Circuit Court addressed the issue whether, given the Michigan Supreme Court's determination that Golec presented evidence that his supervisor had "faux intent" with regard to Golec's injury, the "intentional tort" exclusions in the WC/EL and CUP policies precluded coverage for those injuries. *Id.* at *3. The parties filed cross-motions for summary disposition. *Id.* at *2.

On the WC/EL "intentionally caused" exclusion, the trial court granted summary disposition in Golec's favor, ruling that the exclusion did not apply to faux intent and that the WC/EL policy provided coverage for Golec's injuries. *Id.* at *3. On the CUP policy, the trial court granted summary disposition in favor of Travelers, ruling that the exclusion precluded coverage as a matter of law. *Id.* The court reasoned that the "coverage exclusion in the CUP is broader than the coverage exclusion in the WC/EL policy." *Id.* The trial court stated:

> [T]his court finds that plaintiff's injury is excluded under the CUP. The only way plaintiff can avoid the exclusive remedy provisions of the WDCA is by proving that injury was certain to occur and that MEC willfully disregarded the fact that injury was certain to occur. Because injury can only occur as a consequence of MEC's conduct, *MEC's subjective expectation of bodily injury to Golec should be inferred as a matter of law.* [Emphasis added.]

1. Terrill relies on *St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451, 455 (Mo. App. E.D.2000) to argue Missouri courts have held that a summary judgment is a determination on the merits for collateral estoppel purposes. Terrill's reliance on *St. Louis University* is misplaced. The court in *St. Louis*

*University* was referring to a grant of summary judgment as being a decision that is neither a "preliminary or technical point." *Id.* Here, the Michigan Appeals Court reversed the trial court's grant of summary judgment in favor of Travelers.

*Id.* In other words, the trial court ruled that, as a matter of law, "the 'faux' intent standard under the WDCA is equivalent to the subjective standard envisioned in the CUP exclusion (bodily injury 'expected or intended from the standpoint of the insured')." *Id.* at *4.

On appeal, the Michigan Court of Appeals framed the issue before it as "whether a finding that defendant had actual knowledge that an injury was certain to occur, yet disregarded that knowledge, is the legal equivalent of the injury being 'expected or intended from the standpoint of the insured.'" *Id.* The appellate court answered that question in the negative. *Id.* It rejected the trial court's determination that Metal Exchange's subjective intent to cause bodily injury could be inferred as a matter of law. *Id.* To the contrary, the court of appeals stated that if Golec's supervisor ordered him back to work in disregard of knowledge of certain injury "[i]t does not necessarily follow, however, that [the supervisor] expected that Golec would be injured." *Id.*

The court of appeals reversed the trial court's grant of summary disposition, holding that "it is possible to deliberately disregard actual knowledge that an injury is certain to occur without actually intending or expecting the injury." *Id.*

> The "faux" intent provision holds an employer responsible for an intentional injury when, although the injury was not truly intended, the circumstances were such that the employer was aware of all the elements leading to certain injury, although for some reason, the employer ignored the obvious and placed the employee in harm's way. Under these circumstances, it *may or may not be the case* that the employer subjectively expected the injury to occur. The employer may have ignored the obvious, without actually intending injury, but,

nevertheless, expecting it and being indifferent to it. Or, the employer may have ignored the obvious because although all the elements leading to certain injury were present and known to the employer, the employer did not bother to put two and two together in its haste to get the job done. *The policy exclusion requires consideration of the subjective expectation of the employer.* Under this standard, liability under the "faux" intent [statutory] provision does not preclude coverage as a matter of law. Such is the case here.

[Emphasis added.]

*Id.* Based on this language, the Michigan appellate court did not determine that the CUP policy provided coverage as a matter of law. The court did not make any finding as to the subjective expectations of Golec's supervisor (nor would such an issue be appropriate for summary disposition). The Michigan Court of Appeals did not enter judgment for Golec on the CUP policy. It merely reversed the trial court's grant of summary disposition on grounds that the CUP policy exclusion requires consideration of the "subjective expectation of the employer," something that the trial court had erroneously inferred as a matter of law. Therefore, the trier of fact was left to determine whether the employer subjectively expected Golec's injury to occur in order to determine coverage under the CUP policy.

Contrary to Terrill's assertions, the Michigan Court of Appeals expressly rejected Golec's argument that the CUP policy provided coverage for Golec's injuries as a matter of law. *Id.* at *5. Golec argued that the CUP policy and WC/EL policy should be construed to provide the same coverage since Travelers intended the former to provide excess coverage. *Id.* The court determined that "the CUP exclusion differs from the WC/EL policy's 'intention-

ally caused' exclusion" and thus the "coverage under the CUP policy is not co-extensive with the WC/EL policy." *Id.* at *6.

■ Before the issue of coverage under the CUP policy was decided, the parties settled the case. As a result, no court has finally adjudicated whether the CUP policy provided coverage for Golec's injuries.[2] Nor has Travelers ever admitted coverage under the CUP policy. The trial court erred in granting Terrill's summary judgment on the basis of collateral estoppel. Point one is granted.

■ In its second point, Metal Exchange argues the trial court erred in granting Terrill summary judgment because a genuine issue of material fact exists with respect to the existence of a contract between the parties for Terrill to provide seamless insurance coverage for Metal Exchange. Specifically, Metal Exchange argues there is a genuine dispute over Terrill's contention that "there is no evidence any contract ever existed." We agree.

Summary judgment is not appropriate if the plaintiff shows a genuine dispute as to the facts underlying his right to judgment. *ITT*, 854 S.W.2d at 381. A " 'genuine dispute' exists when the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* Here, the record contains sufficient evidence to create a genuine dispute as to the existence and terms of the relevant contract.

■ Where the evidence regarding a contract is conflicting or is capable of more than one inference, summary judgment is not appropriate. *Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo.App. 1999). "The standard is what a reasonably prudent person would be led to believe from the actions and words of the parties and this is a question to be resolved by the trier of fact." *Id.* (Genuine issue of material fact precluded summary judgment when record contained conflicting evidence as to whether party extended contract offer). *See also Weldon, Williams & Lick, Inc. v. L.B. Poultry Co.*, 537 S.W.2d 868, 872 (Mo.App.1976) (summary judgment reversed when the record demonstrated issues of fact as to the terms of the parties' contract and the existence of the custom or usage of trade which might explain the terms of that agreement).

At a minimum, the record in this case demonstrates a genuine dispute of fact as to the existence of an agreement. Edward O. Merz, Executive Vice President and CFO of Metal Exchange testified that while there was no written agreement "per se," Terrill made "some proposals" and "we paid about $50,000 to Terrill to handle the placement of our insurance needs." Chuck Thomas, who worked in insurance administration for Metal Exchange from 1986 to 1995, testified at his deposition as follows:

Q: Okay. What was your understanding both at Metal Exchange and prior to that, about the relationship between the umbrella or excess policy on the one hand and the underlying policy on the other hand?

---

**2.** In addition, Terrill argues that counsel for Metal Exchange admitted in a letter that the Michigan Court of Appeals "found that Travelers should have provided coverage to our clients." "The admission, to be binding, must be one of fact and not a conclusion of law." *Stockton v. Tester,* 273 S.W.2d 783, 786 (Mo. App.1954). At best, the attorney's remark in the instant case was a legal conclusion. We further note, the letter goes on to state that the case be stayed until "the litigation in Michigan has reached an absolutely final resolution such that it will not change."

\* \* \*

A: It would be—what we would call a "following form," in that your coverages that are provided by the primary, it would be the same coverage, in excess of that would be—would be with the umbrella coverage, it would be a seamless transition there.

Q: A seamless transition?

A: Correct.

\* \* \*

Q: Was it your understanding with the Metal Exchange situation that the first excess level was going to be seamless, the relationship between the first excess and the underlying coverage would be seamless?

\* \* \*

A: That would certainly be the intent of what we expected.

Terrill's representatives confirmed this testimony. Robert Gibbs worked for Terrill from 1982 to 1989 and served as the broker for Metal Exchange when the subject polices were issued. He admitted at his deposition that, pursuant to the agreement between the parties, Metal Exchange retained Terrill to procure following-form coverage:

Q: When Metal Exchange began using Terrill's services was there a written agreement that was executed?

A: In terms of a fee agreement?

Q: Any type of agreement?

A: I believe there was a fee agreement, I believe, that was executed which really defined the cost.

\* \* \*

Q: During your years at Terrill what was the fee basis that you have with Metal Exchange, or compensation basis?

A: Compensation basis was a combination, if you will, if I remember correctly we had a fee for all coverage except Work Comp which I think part or all of that was on a commission.

\* \* \*

Q: You were proposing a payment for services of fifty thousand dollars, is that right?

A: Yes, that's correct.

Q: That would have been in addition to the commissions you had received on the Worker's Comp policies?

A: That's correct.

Q: Do you know whether that was done, whether that proposal was accepted and a fee of fifty thousand paid?

\* \* \*

A: I believe the fee was fifty thousand dollars . . . . .

\* \* \*

Q: And did you understand that it was Metal Exchange's expectation that the umbrella coverage that it secured with respect to its Worker's Comp would be at least as great as its primary coverage?

A: I would say that was their expectation.

\* \* \*

Q: And as you said before it was—you understood Metal Exchange's expectation would be that this excess coverage would be seamless, that the same as the primary coverage?

A: Well, maybe it's presumptuous for me to say that, but I would think it

would be seamless in terms of the specifications that were developed by Metal Exchange.

Q: It was not their expectation that the excess policies would cover something less than the primary policies?

A: Nor would it be mine.

At a minimum, the record contains ample evidence of the existence and terms of a contract between Terrill and Metal Exchange.[3] The trial court erred in granting Terrill summary judgment on this point. Point two is granted.

We reverse the trial court's grant of summary judgment to Terrill on all of Metal Exchange's claims and remand for further proceedings.

NANNETTE A. BAKER, P.J. and SHERRI B. SULLIVAN, J., concur.

---

**3.** Terrill contends that Metal Exchange's claims are barred under the doctrine of merger. We note, however, that Terrill's argument was not properly pleaded and therefore waived. *See Weil v. Rigali*, 980 S.W.2d 89, 91 (Mo.App. E.D.1998)("If an affirmative defense is not pleaded, it results in a waiver of that defense"). Similarly, even if Terrill asserted duty to inspect/contributory negligence as an affirmative defense in its answer, Terrill, as broker, owed Metal Exchange a fiduciary duty to procure the WC/EL and CUP policies in accordance with Metal Exchange's wishes. *See A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394–395 (Mo.App. E.D. 1998)("[w]hen an insurance broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence").