Lee O. WOODS, Jr., and John Silver,
Respondents/Cross–Appellants,

v.

MEHLVILLE CHRYSLER–PLYM-
OUTH, Inc., Appellant/Cross–
Respondent,

and

Paul Robert Andrews, Cross–
Respondent.

No. ED 86386.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 8, 2006.

James C. Ochs, Clayton, MO, for appellant.

Mitchell B. Stoddard, St. Louis, MO, for respondent.

BOOKER T. SHAW, Judge.

Mehlville Chrysler–Plymouth, Inc. ("MC") appeals from the trial court's judgment entered upon the jury's verdict awarding damages and attorney's fees to Lee O. Woods, Jr. ("Woods") and John Silver (collectively "Respondents") on their petition for common law fraud and violation of Section 407.820, RSMo 2000, the Missouri Merchandising Practices Act ("MMPA"). MC argues the Circuit Court of the City of St. Louis ("City") erred in failing to dismiss the case for lack of subject matter jurisdiction. Because we find this point dispositive of the appeal, we do not address MC's remaining points. Respondents cross-appeal against MC and Paul Robert Andrews ("Andrews"), and raise four points on appeal. Because of our disposition of the direct appeal, however, three of these points are now moot. We only address Respondents' point arguing the City erred in granting MC and Andrews' motion for directed verdict in favor of Andrews. We reverse and remand for the City to dismiss the case.[1]

### Facts and Procedural History

On June 12, 2002, Lee Woods purchased a 1994 Pontiac Grand Am ("vehicle") for $1,500 for his nephew, John Silver, from J.W. Motors ("J.W.").[2] Woods did not receive the title to the vehicle on the purchase date, but was told by an employee of J.W. that he could pick up the title in a couple of days from J.W. Soon thereafter, J.W. went out of business without Woods obtaining title to the vehicle. Before going out of business, one of J.W.'s employees told Woods that MC, an Illinois car dealership, had possession of the title. Woods began calling MC in an effort to obtain the title to the vehicle. The title clerk ("clerk") at MC told him that MC had previously sold the vehicle to J.W., but had not yet received payment for it from J.W. The clerk also told Woods that the title had not yet arrived at MC.

In the Fall of 2002, the clerk told Woods that the title to the vehicle had finally arrived. Woods asked if he could pick up the title, but the clerk stated she had to speak to her boss, Andrews,[3] first. Several days later, the clerk informed Woods that Andrews would not release the title to him because MC had not received payment from J.W. for the vehicle. In response, Woods offered to pay $500 to MC for the title if MC would reimburse him the $500 should: (1) MC recover the sale price of the vehicle from J.W., or (2) MC decide not to pursue J.W. for the sale price of the vehicle. Woods testified that the clerk stated to him that Andrews agreed to these terms. Woods then drove to MC to pay the $500 and pick up the title to the vehicle. Woods then transferred the title of the vehicle to himself and his nephew, John Silver.

A few weeks later, Woods learned that MC had decided not to pursue J.W. for the sale price of the vehicle, and he asked MC

---

**1.** Respondents' Motion for Attorney's Fees on appeal is denied.

**2.** J.W. Motors was not a party to this litigation.

**3.** The record before us reflects that Andrews was also a stockholder of MC.

to reimburse him the $500 he paid for the title, which MC refused to do. In December of 2002, Woods filed a lawsuit against MC in St. Louis County Circuit Court ("County"), alleging a violation of the MMPA, and common law fraud. In the middle of the jury trial, MC challenged the County's subject matter jurisdiction. Woods conceded that the County lacked subject matter jurisdiction, and on Woods's oral motion, the County dismissed the case for lack of subject matter jurisdiction. This dismissal was not appealed.

On November 21, 2003, Respondents filed another lawsuit in the City asserting the same cause of action against MC, a violation of the MMPA and common law fraud. In addition, Respondents brought a claim against Andrews for common law fraud. MC and Andrews filed a motion to dismiss the lawsuit for lack of subject matter jurisdiction or alternatively, to dismiss for lack of venue or to stay the proceedings. The City denied their motion, and the lawsuit proceeded to trial.[4] At the close of Woods's evidence, MC and Andrews filed a motion for directed verdict in favor of Andrews, which was granted. The jury found in favor of Respondents on both of their claims against MC, and the City entered judgment awarding damages and attorney's fees to Respondents. This appeal followed.

### Analysis

Because MC's first point is dispositive of this appeal, we need not address its remaining three points.[5] In its first point on appeal, MC argues the City erred in denying its motion to dismiss Respondents'

case for lack of subject matter jurisdiction. Specifically, MC argues that Respondents were barred under the doctrine of issue preclusion from relitigating the case in the City because Respondents had previously filed the same cause of action against MC in the County and the County dismissed the case for lack of subject matter jurisdiction. Respondents argue that issue preclusion did not bar them from bringing the case in the City because the issue of subject matter jurisdiction was not fully and fairly litigated in the County. We disagree with Respondents.

 Issue preclusion, also known as collateral estoppel, precludes parties from relitigating issues that have been previously adjudicated. *Metal Exchange Corp. v. J.W. Terrill, Inc.,* 173 S.W.3d 672, 676 (Mo.App. E.D.2005). Under the doctrine of issue preclusion, a party is barred from raising an issue in a subsequent proceeding if: (1) the issue decided in the prior proceeding was identical to the issue presented in the current action; (2) the prior judgment resulted in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with the party in the prior proceeding; and (4) the party had a full and fair opportunity to litigate the issues in the prior proceeding. *Id.* Issue preclusion applies to jurisdictional questions, as well as to other issues before the court. *Sexton v. Jenkins & Associates, Inc.,* 152 S.W.3d 270, 273 (Mo. banc 2004).

 "Subject matter jurisdiction is a tribunal's statutory authority to hear a particular kind of claim." *Id.* "[W]hen the

---

4. MC and Andrews also filed a motion for reconsideration, motion to preclude issues, and motion for summary judgment alleging lack of subject matter jurisdiction, which the City denied.

5. In MC's other three points on appeal, MC argues the City erred in overruling its motion to elect theories before the submission of the case, overruling its motion for a directed verdict, and submitting certain instructions to the jury.

question of subject matter jurisdiction has been fully litigated in the original forum, the issue cannot be retried in a subsequent action between the parties." *Id.* at 274. The only action a court without subject matter jurisdiction can take is to exercise its power to dismiss. *Johnson v. Director of Revenue,* 879 S.W.2d 754, 755 (Mo.App. E.D.1994).

■■■ On appeal, Respondents only assert that Woods's counsel did not have the opportunity to fully and fairly litigate the issue of subject matter jurisdiction because MC did not raise the issue until after the first day of jury trial, and Woods's counsel did not have adequate time to research the issue.[6] However, lack of subject matter jurisdiction can be raised at any stage in the proceedings. *American Indus. Resources, Inc. v. T.S.E. Supply Co.,* 708 S.W.2d 806, 808 (Mo.App. E.D.1986). Therefore, Respondents' claim that it was improper for MC to raise the issue of subject matter jurisdiction after the first day of trial is without merit.

■■■ As to the remainder of Respondents' argument, that he did not have a full and fair opportunity to litigate the issue of subject matter jurisdiction, we must consider the following factors: (1) whether Respondents had a strong incentive to litigate in the County; (2) whether the City may afford procedural opportunities to Respondents not available in the first action; (3) whether the County's dismissal does not comport with one or more prior judgments; and (4) whether the forum of the County substantially inconvenienced Respondents. *Miller v. Pool and*

*Canfield, Inc.,* 800 S.W.2d 120, 125 (Mo. App. W.D.1990).

With respect to the first factor of this test, it is clear from the record before us that Woods had a strong incentive to litigate in the County. Woods initiated the case in the County and litigated it through one day of a jury trial before the case was dismissed. *See id.* As to the second factor, there were no procedural opportunities in the City that were not available in the County. With respect to the third factor, the record before us indicates there were no prior judgments between the parties that conflicted with the County's dismissal. Finally, as to the fourth factor, the County was not inconvenient to Woods. Woods resided in St. Louis County and selected that forum. Therefore, we find that Woods had a full and fair opportunity to litigate the issue of subject matter jurisdiction in the County, and he is therefore prohibited by the doctrine of issue preclusion from relitigating this issue in the City. *See id.*

Woods did not appeal the County's dismissal and thus, the City, as a court of concurrent jurisdiction, was bound by the County's determination as to subject matter jurisdiction. *See Bachman v. Bachman et al.,* 997 S.W.2d 23, 25 (Mo.App. E.D.1999) ("Principles of issue preclusion dictate that, even when a court has dismissed a case without prejudice, an issue specifically and necessarily decided by that court is final and may not be relitigated in a second action brought in a court of concurrent jurisdiction."). The City erred in failing to dismiss the case for lack of subject matter jurisdiction. Accordingly, the City's judgment against MC is reversed,

---

6. Woods's counsel stated in his brief that he "actually conceded that the trial court probably did lack subject matter jurisdiction...." He explained in his brief that he believed the trial court lacked subject matter jurisdiction pursuant to Section 407.025.1, RSMo 2000.

In retrospect, however, counsel admits that this section of the statute actually pertains to proper venue, not subject matter jurisdiction. The record before us reveals that he requested the County dismiss his case for lack of subject matter jurisdiction without prejudice.

and we remand to the City for dismissal of the case.

### Cross–Appeal

Only one of Respondents' four points on cross-appeal merits discussion.[7] Respondents argue the trial court erred in directing a verdict in favor of Andrews because Andrews was an agent of MC, and an agent may be personally liable for his fraudulent acts. We need not reach this issue, however, because we find issue preclusion bars Respondents' cause of action against Andrews.

As already discussed above, issue preclusion prohibits parties from relitigating issues that have been previously adjudicated. *Metal Exchange Corp.*, 173 S.W.3d at 676. This doctrine also prohibits *"those in privity[ ]* [with those same parties from] relitigating issues which were necessarily and unambiguously decided in a previous final judgment." *Shores v. Express Lending Services, Inc.*, 998 S.W.2d 122, 126 (Mo.App. E.D.1999) (emphasis added). Here, the County specifically dismissed Respondents' case for "lack of subject matter jurisdiction." This dismissal constituted a final judgment on the merits on the issue of subject matter jurisdiction. *See Sexton*, 152 S.W.3d at 273 ("[A] dismissal without prejudice may be considered a judgment on the merits of issues, such as jurisdiction, that are actually litigated and decided."). Thus, under the doctrine of issue preclusion, because subject matter jurisdiction was conclusively settled in the County, it must be given effect in any subsequent lawsuit by Woods or his privy against MC or those in privity with MC. *See Shores*, 998 S.W.2d at 126.

We find that Andrews, as a stockholder and employee of MC, was in privity with MC. *See Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo.App. E.D.1991) (finding officer/vice-president of corporation to be in privity with the corporation, and applying collateral estoppel to prevent relitigation of same issue by him). As such, the County's judgment regarding its lack of subject matter jurisdiction applies to Andrews as well. Accordingly, the City's judgment directing a verdict in favor of Andrews is also reversed, and we remand to the City for dismissal of the case.

REVERSED AND REMANDED WITH DIRECTIONS.

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., Concur.

---

7. Respondents' three other points on cross-appeal are rendered moot due to this Court's reversal of the City's judgment against MC. In Respondents' other three points on cross-appeal, they argue the City erred in refusing to submit punitive damages to the jury, refusing to enter judgment on both the MMPA and common law fraud verdicts, and reducing the amount of attorney's fees.